# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **Michelle M.,** | Civ. No. 20-07883 (KM) |
| Plaintiff, | |
| v. | **OPINION** |
| **COMMISSIONER OF SOCIAL SECURITY,** | |
| Defendant. | |

**KEVIN MCNULTY, U.S.D.J.:**

    Michelle M. brings this action to review a final decision of the Commissioner of Social Security ("Commissioner") denying her claims for Title II Disability Insurance Benefits ("DIB"). Upon reviewing and weighing certain evidence, the Administrative Law Judge ("ALJ") concluded that Michelle M. was not disabled from June 14, 2016, through March 27, 2019, the date of the decision. Michelle M. claims that the ALJ's decision is not supported by substantial evidence.

    I find that the ALJ's determinations that Michelle M.'s physical and mental limitations did not render her entirely unable to engage in substantial gainful activity were supported by substantial evidence. The Commissioner's decision is therefore **AFFIRMED**.

1

I.   **BACKGROUND**[1]

Michelle M. applied for DIB pursuant to Sections 216(i) and 223(d) of the Social Security Act ("SSA") on December 12, 2016, alleging disability as of June 14, 2016. (AR 19.) Michelle M.'s application was denied initially and on Reconsideration. (AR 51–100.) Michelle M. requested a hearing before an ALJ to review her application de novo. (AR 101–02.) A hearing was held on January 8, 2019, before ALJ Peter R. Lee, who issued a decision on March 27, 2019. ALJ Lee denied disability at step five of the sequential evaluation, on the ground that, although Michelle M. could no longer perform her past relevant work, she is capable of adjusting to a range of light work, with additional non-exertional limitations, that accommodates her limitations and exists in significant numbers in the national economy. (AR 12–23.)

Michelle M. requested Appeals Council Review of ALJ Lee's decision, but her request was denied on May 7, 2020. That denial rendered ALJ Lee's decision the final decision of the Commissioner. (AR 1–8.) Michelle M. now appeals that decision, pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

II.   **DISCUSSION**

**A. Five-Step Process and this Court's Standard of Review**

To qualify for Title II DIB benefits, a claimant must meet the insured status requirements of 42 U.S.C. § 423. To qualify, a claimant must show that she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted (or can be expected to last) for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(c), 1382(a).

---

[1]   Certain citations to the record are abbreviated as follows:

   DE = docket entry in this case

   AR = Administrative Record (DE 7)

   Pl. Br = Plaintiff's brief in support of remand (DE 17)

Under the authority of the SSA, the Social Security Administration (the "Administration") has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 CFR §§ 404.1520, 416.920. This Court's review necessarily incorporates a determination of whether the ALJ properly followed the five-step process, which is prescribed by regulation. The steps may be briefly summarized as follows:

> **Step 1:** Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 CFR §§ 404.1520(b), 416.920(b). If not, move to step two.
>
> **Step 2:** Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, move to step three.
>
> **Step 3:** Determine whether the severe impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 CFR Pt. 404, Subpt. P, App. 1, Pt. A. If so, the claimant is automatically eligible to receive disability benefits (and the analysis ends); if not, move to step four. *Id.* §§ 404.1520(d), 416.920(d).
>
> **RFC and Step 4:** Determine the claimant's "residual functional capacity" ( "RFC"), meaning "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). *Caraballo v. Comm'r of Soc. Sec.*, 2015 WL 457301, at *1 (D.N.J. Feb. 3, 2015). Decide whether, based on her RFC, the claimant can return to her prior occupation. 20 C.F.R. § 1520(a) (4)(iv); *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). If not, move to step five.
>
> **Step 5:** At this point, the burden shifts to the Administration to demonstrate that the claimant, considering her age, education, work experience, and RFC, is capable of performing jobs that exist in significant numbers in the national economy. 20 CFR §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474

3

F.3d 88, 91–92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

On appeal, the Court conducts a plenary review of the legal issues. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). The factual findings of the ALJ are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* When substantial evidence exists to support the ALJ's factual findings, this Court must abide by the ALJ's determinations. *See id.* (citing 42 U.S.C. § 405(g)).

This Court may, under 42 U.S.C. § 405(g), affirm, modify, or reverse the Commissioner's decision, or it may remand the matter to the Commissioner for a rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984); *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 865–66 (3d Cir. 2007). Outright reversal with an award of benefits is appropriate only when a fully developed administrative record contains substantial evidence that the claimant is disabled and entitled to benefits. *Podedworny*, 745 F.2d at 221–222; *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000).

Remand is proper if the record is incomplete, or if there is a lack of substantial evidence to support a definitive finding on one or more steps of the five-step inquiry. *See Podedworny*, 745 F.2d at 221–22. Remand is also proper if the ALJ's decision lacks adequate reasoning or support for its conclusions, or if it contains illogical or contradictory findings. *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119–20 (3d Cir. 2000); *Leech v. Barnhart*, 111 F. App'x 652, 658 (3d Cir. 2004) ("We will not accept the ALJ's conclusion that Leech was not disabled during the relevant period, where his decision contains significant contradictions and is therefore unreliable."). It is also proper to remand where

4

the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted).

### B. The ALJ's Decision

ALJ Lee undertook the five-step inquiry. His conclusions are summarized as follows:

### Step 1

The ALJ concluded that Michelle M. has not engaged in any substantial gainful activity since June 14, 2016, the alleged onset date of her disability. (AR 14.)

### Step 2

The ALJ found that Michelle M. had the following severe impairments: degenerative disc disease, traumatic brain injury (post-concussion syndrome), headaches, diminished cognitive ability, depressive disorder, and anxiety. (AR 14.)

### Step 3

The ALJ found that Michelle M's severe impairments, singly or in combination, did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 14-15.). ALJ Lee paid particular attention to medical listings 1.04 (disorders of the spine), 12.02 (Neurocognitive disorders), 12.04 (depressive, bipolar and related disorders), and 12.06 (anxiety and obsessive-compulsive disorders).

First, ALJ Lee declined to find that Michelle M.'s impairments met the criteria for medical listing 1.04 (disorders of the spine) because the record evidence did not demonstrate that Michelle M. experienced nerve root compression or spinal arachnoiditis, which are a necessary part of the listing. (AR 15.)

Next, ALJ Lee found that Michelle M.'s mental impairments, both individually and in combination, did not meet the criteria of medical listings 12.02, 12.04, and 12.06. Specifically, the "paragraph B" criteria were not satisfied. To satisfy "paragraph B" criteria, a claimant's mental impairments

5

"must result in at least one extreme or two marked limitations in a broad area of functioning which are: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves." (AR 15)[2] In particular, theALJ

---

[2]    A claimant's affective disorder meets or medically equals listings 12.02 and 12.04 when it either satisfies both the paragraph A and paragraph B criteria, or satisfies the C criteria of that listing. 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.04.

To satisfy the paragraph A criteria for listing 12.02, a claimant must demonstrate that she has experienced, "significant cognitive decline from a prior level of functioning." C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.02 To satisfy the paragraph A criteria, for listing 12.04 a claimant must, in essence, medically document the persistence of depressive or bipolar syndrome. 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.04. To satisfy the Paragraph B criteria of listings 12.02 and 12.04, a claimant must demonstrate that his affective disorder results in "extreme limitation of one, or marked limitation of two" of the following areas of mental functioning:

1. Understand, remember, or apply information.

2. Interact with others.

3. Concentrate, persist, or maintain pace.

4. Adapt or manage oneself.

*Id.*

"'Marked' as a standard for measuring the degree of limitation . . . means more than moderate but less than extreme." *Id.* § 12.00.

Listing 12.04, Paragraph C states:

> Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both: (1) Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and (2) Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(C). *See generally Trzeciak v. Colvin*, No. CV 15-6333 (KM), 2016 WL 4769731, at *7 (D.N.J. Sept. 12, 2016).

To meet or medically equal Listing 12.06 (Anxiety and Compulsive Disorders), a claimant must medically document, an anxiety, panic, or obsessive-compulsive disorder *and* the same "Paragraph B" criteria as for medical listing 12.04, *supra.* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06; *see also* https://www.ssa.gov/disability/professionals/bluebook/12.00-MentalDisorders-Adult.htm.

found that the medical evidence demonstrates that Michelle M. had only moderate limitations in the areas of "understanding, remembering, or applying information;" "interacting with others;" and "concentrating, persisting, or maintaining pace" as well as a mild limitation in "adapting or managing oneself." (AR 15.)

ALJ Lee also found that Michelle M. did not meet the "paragraph C" criteria. (AR 15.) He also considered Michelle M.'s degree of mental limitation, however, when determining Michelle M.'s RFC.

### RFC and Step 4 – Ability to Perform Past Work

Next, ALJ Lee defined Michelle M.'s RFC:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can never climb ropes, ladders or scaffolds; she can never be exposed to unprotected heights or hazardous machinery; she can occasionally climb stairs and ramps; she can never crawl; she can occasionally stoop and crouch; she can occasionally reach overhead and frequently reach in all other directions; she can occasionally balance; she can occasionally contact supervisors, co-workers and the public; and, she can only complete simple routine tasks.

(AR 16).

ALJ Lee began his RFC analysis by explaining that he followed a two-step process in which he first determined whether Michelle M. had an underlying medically determinable physical or mental impairment "that can be shown by medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be expected to produce [Michelle M.'s] pain or other symptoms." (AR 16.) He then explained that in the second step, he "must evaluate the intensity, persistence, and limiting effects of [Michelle M.'s] symptoms to determine the extent to which they limit [her] functional limitations." (AR 16.) To do this, he is required to look to objective medical evidence, or to the entire case record where objective medical evidence does not substantiate Michelle M.'s statements about "the intensity, persistence, and limiting effects claimant's symptoms." (AR 16.) That was a correct statement of the governing standard.

7

ALJ Lee concluded that Michelle M.'s medically determinable impairments could reasonably be expected to cause the alleged mental and physical symptoms, but found that her statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR 17.) He notes, for example, that the record evidence reveals that she was able to walk without an assistive device and that medication improved her migraines. (AR 18.)

ALJ Lee also examined Michelle M.'s mental limitations. Her psychiatrists reported that therapy and medication improved her symptoms of anxiety and depression. (AR 19–20.) Dr. Steven Bartlett gave her a number of cognitive tests on which she scored extremely poorly, but she also scored highly on tests meant to detect malingering, leading Dr. Bartlett to determine that the tests were inconclusive; ALJ Lee thus discounted the cognitive findings to some degree, finding a likelihood of symptom magnification. (AR 19.) In addition, another psychiatrist, Dr. Quintana, found Michelle M. to be moderately depressed and mildly anxious, but also found that her thought processes were logical and that she had a "moderately diminished ability to concentrate." (AR 19-20.) In addition, the state agency doctors found that Michelle M. had moderate mental limitations, which in the ALJ's view corroborated Dr. Bartlett's observations. (AR 20.)

Based on these findings, at step four, ALJ Lee agreed with the vocational expert and concluded that Michelle M. was unable to perform her past relevant work as a hair stylist and real estate sales agent. (AR 21.)

### Step 5

At step five, ALJ Lee explained that "considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (AR 21.) Accordingly, he found that Michelle M. is not disabled under the SSA. (AR 22.)

ALJ Lee found that Michelle M.'s ability to perform work has been compromised by non-exertional limitations. (AR 22.) ALJ Lee relied on the

testimony of a vocational expert, who testified that Michelle M. would still be able to perform the following representative occupations: Photocopy Machine Operator, (Dictionary of Occupational Titles ("DOT")) 207.685-014, Office Helper, (DOT) 239.567-010; and Housekeeping Cleaner, (DOT) 323.687-014. (AR 31.)[3] All three occupations are classified as light and low-skilled and there are between 14,792 and 135,080 positions in these three occupations in the United States. (AR 22.)

### C. Michelle M.'s Challenge

Michelle M. challenges the Commissioner's decision on two primary grounds. First, she argues that the ALJ's findings that her mental limitations were only mild or moderate were not supported by substantial evidence and that the ALJ should have declared her disabled at step 3. (Pl. Br. at 11–22.) Second, she argues that the RFC was not supported by substantial evidence because it was not sufficiently connected to the medical records, ignored Michelle M.'s low scores on the tests administered by Dr. Bartlett, and ignored Michelle M.'s self-reported pain. (*Id.* at 23–34.) I find both of these arguments unavailing. First, I find that the ALJ's assessment of the severity of Michelle M.'s mental limitations was supported by substantial evidence and consistent with the record. Second, I find that the RFC was supported by substantial evidence and that the ALJ properly weighed and considered the record evidence.

### 1. Analysis

Michelle M. argues that the ALJ misapplied the Administration's regulations to determine that her mental limitations did not render her disabled at step 3. (Pl. Br. at 11.) Michelle M. argues that the ALJ misapplied the regulations in each of the four "paragraph B" criteria: understanding, remembering, or applying information; interacting with others; concentrating,

---

[3]   When given additional hypothetical restrictions by the ALJ, the vocational expert also noted that there were additional jobs Michelle M. could perform including label pinker and semiconductor bonder. (AR 48.)

9

persisting, or maintaining pace; or adapting or managing themselves. (Pl. Br. 15-23.) Michelle M., however, points to no convincing countervailing evidence that tends to show that the limitations were more severe than those found by the ALJ. I examine the four criteria in order and find that the ALJ's conclusions were supported by substantial evidence.

In the area of understanding, remembering, or applying information, the ALJ found that Michelle M. has a moderate limitation, noting that her ability to sustain attention, concentrate and exert mental control is below average and that "Dr. Barnett noted that the claimant has weakness in working memory and mental control that may make the processing of complex information less efficient." (AR 15.) In contesting this assessment, Michelle M. points to the battery of tests conducted by Dr. Bartlett, on which Michelle M. scored poorly. (Pl. Br. at 16-18.) It is true that if these scores were accepted in full, they would indicate at least a marked limitation in understanding. The ALJ, however, explained that he did not give these scores full weight because Michelle M. also scored highly on a test given by Dr. Bartlett that measured malingering, raising the inference that she was exaggerating her symptoms and purposely scoring poorly on the tests. (AR 19.) In fact, Dr. Bartlett himself stated that his own diagnostic findings were inconclusive, based on Michelle M.'s malingering scores. (AR 274.) The ALJ's decision not to credit the test scores, then, was supported by substantial evidence. What is more, although she cites the language of the relevant regulation, Michelle M. does not point to any other medical evidence that was ignored by the ALJ and that would support a finding of a more severe limitation in understanding. I therefore find that the ALJ's conclusion that Michelle M. had a moderate limitation in understanding, remembering, or applying information was supported by substantial evidence.

In the area of interacting with others, the ALJ also found a moderate limitation. He noted that Michelle M. "complained of nervousness, poor impulse control and being easily frustrated. However, she also reported in her function report that she spends time with her family and children." (AR 15, citation omitted.) In addition, record evidence showed that Michelle M. helped out at

the family hair salon, attended church, and did some household shopping, and that her symptoms had improved with medication. (AR 19-20, 33, 43, 195.) Michelle M. argues that the "interacting with others" criteria involve interacting with strangers and coworkers, not loved ones. (Pl. Br. at 20-21) That is a potential counterargument, but again she points to no other medical evidence that would require the ALJ to have concluded that she has more severe limitations. I therefore find that the ALJ's conclusion that Michelle M. had a moderate limitation in interacting with others was supported by substantial evidence.

In the area of concentrating, persisting, or maintaining pace, the ALJ assessed that Michelle M. had a moderate limitation. (AR 15.) He noted that Dr. Bartlett found "the claimant's ability to process simple or routine visual material without making errors is in the extremely low range compared to her peers." (AR 15.) As noted above, however, Dr. Bartlett's findings were not accepted fully by the ALJ (or even by Dr. Bartlett himself) because of Michele M.'s malingering scores. In addition, the state agency doctors also found that Michelle M. had only a moderate limitation, and the record evidence shows that she was able to follow simple instructions and perform routine tasks. (AR 20, 191-94, 269-70.)  Michelle M. again argues that the ALJ's assessment does not reflect the regulation and that it is too brief to permit judicial review. Again, however, she does not cite any additional medical evidence that could have led to a more severe assessment. (Pl. Br. 21-22.) I therefore find that the ALJ's conclusion that Michelle M. had a moderate limitation in concentrating, persisting, or maintaining pace was supported by substantial evidence.

Finally, in the area of adapting and managing oneself, the ALJ assessed that Michelle M. had a mild limitation. (AR 15.) He noted that she "reported that despite it taking longer than customary to complete, she is capable of dressing, bathing and caring for her hair." (AR 15.) In addition, she appeared well groomed at appointments, cared for her granddaughter, and managed her own medical appointments. (AR 191-94, 307.) Michelle M. again argues that the ALJ's conclusion did not comport with the relevant regulations, but points

to no additional medical evidence that would support a different conclusion. I therefore find that the ALJ's conclusion that Michelle M. had a moderate limitation in adapting and managing oneself was supported by substantial evidence.

I thus find that all of the ALJ's conclusions in step 3 of the analysis were supported by substantial evidence.

Next, I examine Michelle M.'s argument that the RFC was not supported by substantial evidence because it was not sufficiently connected to the medical records, ignored Michelle M.'s low scores on the tests administered by Dr. Bartlett, and ignored Michelle M.'s self-reported pain. I find that the RFC was supported by substantial evidence and therefore affirm the ALJ's decision.

To support his RFC, the ALJ summarized the medical evidence over five pages of the decision, describing Michelle M.'s description of her own symptoms as well as the findings of eleven doctors. (AR 16-21.) Such a narrative review of the evidence is generally sufficient to allow for meaningful judicial review of the ALJ's decision. *See Martinez v. Comm'r Soc. Sec.*, 663 F. App'x 191, 194 (3d Cir. 2016). It is still possible, of course, for the claimant to demonstrate that the ALJ's opinion was inconsistent or that it improperly ignored relevant evidence, *Burnett*, 220 F.3d at 119–20, but the mere fact that the medical evidence was summarized in a narrative format does not invalidate the resulting RFC. The determination that Michelle M. was capable of "light work" is based on the medical findings that show she has some significant exertional limitations but is still able to walk around and carry small amounts of weight. (AR 18.) I thus find that, on the whole, the ALJ has built a "logical bridge" between the medical evidence and the RFC and the RFC is thus supported by substantial evidence. *Shinaberry v. Saul*, 952 F.3d 113, 123 (4th Cir. 2020).

That leaves only Michelle M.'s two specific arguments about why the RFC was not supported by substantial evidence: that it did not take into account the test scores from Dr. Bartlett and that it did not take into account Michelle M.'s self-reported pain. (Pl. Br. at 35.)

As explained above, ALJ Lee did not give full weight to the low scores revealed in Dr. Bartlett's testing because Dr. Bartlett found that the results were inconclusive given the evidence of malingering and symptom exaggeration. (AR 19.) Thus, the ALJ's decision not to integrate the test scores into the RFC was supported by substantial evidence.

Michelle M.'s claims that the ALJ did not take her subjective reports of pain into account in formulating the RFC are based neither in the medical evidence nor the ALJ's opinion. The ALJ's opinion repeatedly discussed her reports of pain to various doctors and considered these reports alongside the full range of medical evidence. (AR 16-18.) The ALJ, considering all of the evidence, determined that the extent and severity of her reported pain was not consistent with the objective medical evidence. Again, although Michelle M. points to regulations regarding how pain should be considered by the ALJ, she does not highlight any medical evidence that was ignored or misinterpreted by the ALJ. There is little in Michelle M.'s testimony or the objective evidence that supports a determination that she was disabled due to consistent intense pain. (AR 16-18, 35-36.) Of course, Michelle M. has undoubtedly experienced a great deal of pain as a result of the car crash and neck surgery. The ALJ, however, took such pain and its treatment into account while formulating the RFC and found that the pain did not prevent her from performing light or sedentary work. The RFC, which determined that Michelle M. is capable of light work with additional non-exertional limitations, is thus supported by substantial evidence.

## III.   CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED. An appropriate order accompanies this Opinion.

Dated: March 1, 2022

/s/ Kevin McNulty
_____
**Hon. Kevin McNulty
United States District Judge**